Go ahead. Good morning. May it please the Court, John Muir on behalf of LRN Corporation. What we have here is a contract that, viewed in the light of the Supreme Court decision in Concepcion, is to be placed on equal footing with all other contract formations. And we have, in this case, a person who receives an offer letter, a job offer letter, which is certainly on its face a contract, and it says, as a condition of employment, you will be required to sign an arbitration agreement. And then the offer letter says, by signing this offer letter, you have agreed to all of our terms and conditions of employment, including the arbitration agreement. Which he's agreed to sign. Yes, which he's agreed to sign. Right. So where's the signed arbitration agreement? The parties cannot find the signed arbitration agreement, but plaintiff doesn't say. Well, you would have been in control of the arbitration agreement, right? We would have been in control of the arbitration agreement, as the record shows there are missing things from the plaintiff's personnel file. And the plaintiff himself, though, in his testimony, as we cite in our reply papers, does not say that he refused to sign or did not sign the arbitration agreement. He merely says, I can't recall seeing it, and I can't recall signing it. And so we don't even have the plaintiff repudiating that there was a contract. When the plaintiff then becomes an employee and goes through what is referred to as the onboarding process, he signs an agreement for confidentiality, and the confidentiality agreement says that any disputes will be resolved based on the mutual agreement to arbitrate claims, which has been signed by you and the company. And so we have – Any disputes over this agreement, meaning the confidentiality agreement, correct? Yes, but the confidentiality agreement doesn't have its own arbitration claims. No, right, but again, it points to the signed arbitration agreement. It points to a signed arbitration agreement and incorporates it by reference. And an incorporation by reference can be of a different subject matter than the document that incorporates it. As Justice – I'm sorry, Judge Pregerson wrote in the Knutson v. SiriusXM radio case shortly after the briefing here was completed, an authoree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted whatever the terms are that the offer contains. By signing both the offer letter and the confidentiality agreement – Does that case involve arbitration? Yes, yes. That was the case where somebody purchased a Toyota and then there was an arbitration agreement with a satellite radio provider, Sirius Radio, and the court held that the arbitration agreement for Sirius Radio was not made available to the – Yeah, but, you know, this is a case that involves a waiver of rights under Title VII and where an employer uses these contracts of adhesion, you know, if you don't sign this, you're not going to get a job, and you've got to give up all your rights, and, you know. In this case, Your Honor, there is no contract of adhesion, and plaintiff admits that. It was in an offer letter that he was free to negotiate, and the offer letter said if you would like to see the arbitration agreement – He has – what's his negotiating power? Well, he was going into a – Take it or leave it, you know. You want to work? You want to feed your family? Sign this. He could have negotiated that. He's going to negotiate with them and sit down and say, I don't want this arbitration business? He could have. Could have, but how far would he have gotten? He may have gotten far enough so that they could have – Far enough to get to the back door where they could kick him out, huh? There's no evidence of that, Your Honor, and even Mr. Sokolov is not arguing procedural unconscionability, and looking at the arbitration agreement itself, it can't be tagged with substantive unconscionability, and the Ninth Circuit and the California Supreme Court and the U.S. Supreme Court have said that the parties can enter into a contract. Anyway, he didn't sign the arbitration agreement. Well, it's in question whether he signed the separate document. Again, he says, I don't recall it. And you don't have it. And we don't have it. You don't have anybody who was there at the time. We don't have anybody. So you don't have anybody who can say, well, I watched him sign it. We don't have anybody who was there at the time, but we do have plaintiff himself admitting that he signed the other two documents that incorporate that by reference, and under Concepcion and under Knutson v. Sirius Radio, that's enough to place the other contracting party on notice that they are entering into a contract, and by signing that contract, they're agreeing to arbitration. And the California Court of Appeal in the Cruz case held that just a reference to you're going to have to arbitrate on a job application. Is he entitled to know what? I mean, what the terms of the arbitration agreement are? Yes, and so the offer letter says that if you would like to receive copies of these documents, which include the arbitration agreement or our benefit plans or other company policies, ask human resources for them, and you can review them before signing the offer letter. And the cases involving incorporation by reference merely state that you have to identify the contract, not the content, but just identify the contract well enough so that the other party can understand that there is something else. In this case, we offered the contract to him. We offered him the time to review the contract before signing, and when he became on board at the company, he also had an opportunity to review it again. He says, I don't remember I read some things in more detail than I read other things, but he then did sign it. Do we even know from this record whether the arbitration agreement was even presented to him for review? The record shows that on a new hire checklist, there is a checkmark showing that the arbitration agreement was presented and signed. And we have testimony from the human resources representative who was available after the lawsuit was filed who says that it has been our standard practice to provide this arbitration agreement to everyone and ask them to sign it. And ironically, counsel for plaintiff knows that because she's sued LRN before in a case involving an arbitration agreement that was signed by her client, and there's no testimony that anyone has not signed the arbitration agreement. We just have a missing personnel file. Because the general practice is to present the offer letter and the arbitration agreement all as part of the getting somebody new on board process, right? Yes. So then those documents that were presented and signed by the employee would be put in his personnel file, presumably? Presumably, Your Honor, although. And so all of a sudden, the absence of a signed arbitration agreement, that's very telling, isn't it? No, Your Honor, I don't believe so because the other documents promising to sign the arbitration agreement and then confirming that the arbitration agreement has, in fact, been signed were in the personnel file and plaintiff does not dispute. Well, I mean, you know, when you look at the checklist, all it just has is a checkmark by mutual agreement to arbitrate claims. Your Honor, there have been cases where continued employment were a nod of the head where an oral yes have been held to create an enforceable arbitration agreement. There's no requirement that a contract in an arbitration agreement, which has to be treated the same as other contracts, be placed in somebody's personnel file. Well, I mean, you know, what does that mean? It's got a checkmark. Does that mean that he signed it? Does that mean it was just presented to him? Does that mean it was discussed with him? Well, it takes it on. There's nobody. We don't have a person who was there who checked this box. As Judge Preggerson intimated, if he didn't sign the arbitration agreement, he'd be out the door. The plaintiff worked at this company for four years after this process, never reputed the arbitration agreement, never said I didn't sign it. Well, by the same token, you would think that if they had this checklist, as Judge Wynn just noted, that if he went to his personnel file, it would be right there. Your Honor, as an employment lawyer, I don't think that I've ---- It's got all these little ---- it's got everything, new state, you know, resume, background check, offer letter, nondisclosure agreement, I-9 employment eligibility verification, W-4 tax withholding. And the testimony in the record shows that a number of those documents are also missing from the personnel file. The recordkeeping in this instance was not perfect. It rarely is in cases where there are multiple directors of personnel going through a company. Who pays for the arbitration? The company pays entirely for the arbitration. All of the rights afforded under the Federal Rules of Civil Procedure are provided for in the arbitration agreement. And the arbitration agreement, even the other side does not contend is in any way unconscionable. I mean, the only thing that it removes is a jury. But it provides every other right that a Title VII or state discrimination litigant would have in a civil court. There's been nothing in the record challenging ---- Where do you get the arbitrators? The arbitration agreement says that it can be conducted under the auspices of one of three organizations, AAA, the American Arbitration Association, JAMS, the Judicial Arbitration and Mediation Service, or ADR Services, which is another local provider of arbitrators and mediators. Which one does the company use? It can be selected by the parties in the arbitration. There's no requirement to use one or the other. The panels at each of these organizations are very robust. Sometimes judges move from one organization to another, and so this gives the parties more flexibility in who they choose. That's probably one of the worst things that happened to the state judiciary. Judges leaving become arbitrators. I understand it's more lucrative for a state court judge to be an arbitrator. Well, then they shouldn't become a state court judge if they just like money, huh? What? Let me ask you one. Yes. Putting aside the whole business about judges becoming arbitrators and mediators, what's the main California case that you rely upon? What's the strongest case that supports your argument here? Probably the Cruz case decided in 2014 where somebody signed a job application, and the arbitration agreement itself wasn't even created at the time the application was signed, and the court held that the parties had entered into a binding arbitration agreement because there was an expression of mutual intent. And there again, unlike in our case where we have a full-blown arbitration agreement with all of the bells and whistles that this court has accepted. Did the agreement there, the underlying agreement, require a signed arbitration agreement? The underlying agreement, again, Your Honor, was not even created at the time that the job application was signed. It just said you'll be subject to our arbitration program. And the record in that case showed that the arbitration program hadn't been created yet. And so, I mean, this court has held in numerous other cases that contracts where there's no dispute of assent to the contract terms are enforceable without a signature. And in this case, there is a signature promising to sign. In order to adopt a type of piecemeal theory of contracts where somebody has to sign at every stage is contrary to AT&T Concepcion and contrary to Knutson, which both hold that an arbitration agreement is subject to the same terms of contract formation as any other contract. How do you distinguish this case from Mead 3, which is a California case, I think, in 2007, where the – I don't know if it was a separate offer of employment letter or employee handbook references arbitration but said that it will be signed and defendants there didn't produce the signed copy, and so, therefore, they lose. Isn't that this situation? No, Your Honor. Why not? In the Mead 3 case, there were two documents. One document referenced arbitration and it was not signed. And another document did not reference arbitration and it was signed. There were two sections of the employee handbook. There was a section that the plaintiff signed, which did not incorporate an arbitration agreement by reference, and then there was another section of the employee handbook containing the arbitration clause that the employee did not sign. And in that case, the plaintiff also directly repudiated and said, I'm not going to sign an arbitration agreement. And so that case is much different from our case where there is a document that expressly incorporates the arbitration agreement that the plaintiff did sign, and in this case, he signed it twice. Okay. I think you're over your time, so let's hear from the other side. Good morning, Your Honors. May it please the Court. My name is Jeanine Stilwell and I represent Mr. Sokoloff aptly in this case. I'm trying to keep your voice up. Yes, Your Honor. I will. Did Mr. Sokoloff enter into a knowing and voluntary agreement to arbitrate his FIHA and discrimination claims? The evidence is clear that Mr. Sokoloff did not receive or see this mutual agreement to arbitrate claims until for the first time it was presented in connection with this motion. So not only did he not sign it, he never was provided with a copy of this. In terms of the documents that he received at the time of hire, he recalls receiving the confidentiality agreement, which he signed, which I'll mention in a second, and several other documents that he testified he kept in a binder at home. There was no mutual agreement to arbitrate claims provided to him. In terms of what he did sign, I think it's very important. It seems pretty clear, though, that the offer letter made reference to an arbitrate. You'd be required to sign an arbitration agreement, right? The wording, though, is very particular. I think it needs to have close attention paid to. In his offer letter, it states that you will be required to sign a confidentiality and invention agreement. The next line is you will also be required to sign a mutual agreement to arbitrate claims. There's no reference to all claims. There's no reference to all employment-related claims. There's no reference to discrimination claims. It's just simply all claims, not knowing what that – I'm sorry, it's not all claims. It's simply a reference to claims. But it doesn't say you will also be required to sign a mutual agreement. To arbitrate claims of some sort if you don't know what. Now then, turning to the confidentiality and invention agreement, which he did sign, that agreement says all disputes about this agreement, the confidentiality and invention agreement, will be subject to this separate mutual agreement to arbitrate claims. Taking those two documents in conjunction with each other, reasonable interpretation could be, I think would be, that this mutual agreement to arbitrate claims that's referenced in the offer letter is in fact this mutual agreement to arbitrate the confidentiality and invention claims, if there are any concerning that agreement. There's nothing in any documents he signed, again, which signify that all claims or any claims concerning your termination or discrimination, any of that language that would typically alert employees what claims they would be required to arbitrate, none of that was provided to him. Under court's precedent in prudential versus lie, if an employee is not on notice of what claims are going to be subject to arbitration, there is no binding arbitration agreement. I'd like to address – Judge Snyder's ruling opinion. There was absolutely no evidence he signed the mutual agreement to arbitrate claims or otherwise agreed to arbitrate claims. That was it? That was it. You're not satisfied with that? I'm completely satisfied with that, Your Honor. Why are you going through all of this? I was responding to counsel's arguments. I'd also like to point out the case that LRN's counsel said was most— Well, you're only up here because it was a denial of their motion to arbitrate, and under that circumstance he has the right to automatically appeal. Correct. You have to be here and you have to defend what Judge Snyder did. Correct. Right? Yes. So we're now two years delayed over this arbitration argument. So there's no express agreement? There's no express agreement. There's no signed? There's no implied agreement. He says, well, there's an implied agreement. Well, to address that, that Meetry case that Your Honor pointed out is exactly on point, and there are other cases as well in California law that says if an employer requires, tells employees you're required to sign an arbitration agreement, there could be no implied agreement. The employer makes it express, and if an express agreement is required, the employer has to get the employee to sign that express agreement. In Meetry, the employee didn't repudiate. It was exactly the same as in this case. The employee just didn't sign, was never presented with the agreement, as in this case. Mr. Sokoloff never was presented with an agreement to sign. And then counsel's other argument is, well, it's incorporated by reference. Well, if you look again at the wording of the agreements, there's no incorporation by reference language. There's nothing to incorporate it by reference. If you wanted it to be incorporated by reference, it would need to be some indication of that, which there is not. In the Cruz case, the Cruz v. Kroger that LRN's counsel mentioned, the employee in that case signed an application, which spells out you're subject to mandatory and binding arbitration. I agree to abide by the company's arbitration policy. I agree. I mean, the language was set out in the application itself that the employee signed. Also in that application, in the Cruz case, there was a reference to the arbitration agreement specifically is incorporated by reference. That language was in the application the employee signed. Of course, here, none of that is the case. So in the Cruz case, the language in the application itself that the plaintiff signed, agreeing to the mandatory arbitration policy, was sufficient to establish an agreement in and of itself. Here, there is simply no evidence that Mr. Sokoloff ever agreed to arbitration. Thank you. Thank you. You're out of time. One minute. One minute, and that's it. Well, before you get started, I just want to tell you this. You're a very good lawyer, and you're very thorough. Thank you, Your Honor. I compliment you on that. But as far as that other case is concerned, the one that involved the fellow that bought a car and then all of a sudden found out that by driving it or by not disavowing any obligation to continue making the payments, when I was in law school, you had to have an offer and acceptance. And if somebody made an offer and you did nothing about it, you didn't accept it, then your silence does not amount to an acceptance. But that's all changed now. You can have people send stuff to you and tell you if you don't return it within so many days that that's to be construed as your acceptance. We're at the mercy of all that. In this case, though, Your Honor, we went well beyond that. I just wanted to clarify two points that counsel made. The job offer letter does incorporate the mutual agreement to arbitrate claims by reference. It says by signing this offer letter, you are agreeing to all of LRN's rules, policies, and procedures, which then, when he becomes employed, include the mutual agreement to arbitrate claims. He is agreeing to agree, and that is enough for an enforceable contract. A contract, as Judge Pragerson wrote in the Knutson case, can be accepted, and as he just mentioned, by conduct. By accepting the job offer on the condition of arbitration, Mr. Sokolov agreed to arbitration. And the mutual agreement to arbitrate claims, which there's no dispute was always available to him, includes all employment-related claims, including statutory nondiscrimination claims. But that case didn't involve giving up very valuable rights under Title VII. There's a big difference. We believe he's not giving up his rights. He's just having his rights adjudicated in a more efficient form. He's giving up his right to go to court, to have a jury decide his case, and all of that. As is the employer, yes. Yeah, that's right. So the other was an irritant to him. But here he's giving up something very important. So there's a difference. I understand that. I think the Supreme Court is looking at this whole issue carefully. In the most recent pronouncement on this in Concepcion AT&T, the Supreme Court said just because it's an arbitration agreement and just because it's giving up substantive rights, such as nondiscrimination claims, it still needs to be placed on equal footing with all other contract formation and all other rules for is there an enforceable contract. It can't be held to a higher standard. There's a lot of pushback on that. Respectfully, I think that that's the California Supreme Court's pronouncement on that and that the courts are required to follow.  Thank you, Your Honors. Thank you, Counsel. We appreciate your arguments this morning and the matter is submitted.
judges: Pregerson, Paez, Nguyen